IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

          Plaintiff,

vs.                            Case No. 10-40041-01-SAC

NICKLAUS S. CIANCIARULO,

          Defendant.

MEMORANDUM AND ORDER

This case comes before the Court on the following motions filed by defendant: 1) motion to compel discovery regarding informants (Dk. 17); 2) motion for discovery of reports related to controlled buys (Dk. 19); 3) motion to suppress evidence from January 15, 2010 search (Dk. 14); and 4) motion to suppress evidence from April 12, 2010 search (Dk. 16).The government has responded to each motion (Dk. 21, 22, 23, and 24).

At the evidentiary hearing set for June 23, 2010, counsel for both parties announced their agreement to forego calling any witnesses, to forego making any argument, and to instead submit the case on the briefs. Accordingly, the court shall consider the search warrant affidavits attached to the parties' briefs to constitute the stipulated facts for purposes of resolving the pending motions, since these are the only evidentiary matters of record. The parties additionally agreed that the government had produced the discovery requested by defendant, except for the names and addresses of the confidential informants, which had been redacted from the reports. Lastly, at the

hearing, the court specifically inquired whether a confidential informant participated in the April 17, 2009 charged offense, and defense counsel replied definitively that none had.

**Facts**

Defendant is charged with one count of distributing methamphetamine on or about April 17, 2009, and one count of possession with intent to distribute methamphetamine on January 15, 2010. The search warrant reveals that confidential informants purchased methamphetamine from defendant in his van, at undisclosed locations other than his residence, in September, October and November of 2008. Immediately after the latter two buys, DEU agents followed defendant directly to his home on Grand Ct. In April of 2009, defendant moved from that residence to a residence on 43rd Street. A confidential source purchased methamphetamine from the defendant at that residence in April. In October of 2009, officers learned that defendant had moved back into the residence on Grand Ct., where they noticed a "high volume of short term traffic at all times of the day and night." Dk. 21, Exh. 1.

On January 11, 2010, Deputy Pipkin and Deputy Clemmons went to defendant's residence on Grand Ct. and seized four trash bags, which they searched. Inside, they found twelve torn plastic baggies, four burnt marijuana cigarettes (one of which tested positive for THC), and other containers with residue which tested positive for methamphetamine. Dk. 21, Ex.1. Officers then obtained and executed a search warrant of defendant's Grand Ct. residence on January 15, 2010. During that search they found evidence leading to defendant's charge of possession with intent to distribute methamphetamine. Defendant contends that this search warrant lacked probable cause

because it was based on the illegal search of his trash.

**Discovery motions**

Defendant's motion to compel discovery regarding informants (Dk. 17), and motion for discovery of reports related to controlled buys (Dk. 19) are moot except to the extent defendant seeks and the government refuses to reveal the names and addresses of confidential informants. The government contends that the public interest in protecting the flow of law enforcement information outweighs the defendant's need for that information in this case, since the confidential informants will not be testifying at trial, and that defendant is charged with crimes "outside of the controlled purchases of illegal drugs by confidential informants." Dk. 23, p. 3. The affidavit show that confidential informants made controlled buys from the defendant on September 17, 2008, October 13, 2008, November 20, 2008, and "during April of 2009." Dk. 21, Exh.1. Although the date of the April buy is not stated, defense counsel agreed at the hearing held on June 23rd that no confidential informant was involved in the April 17th, 2009 offense charged in the indictment. The government asserts that because "those particular instances involving the confidential informant's transactions with the defendant are not charged in this indictment," Dk. 23, p. 3, defendant has no need to interview them.

"The law is clear that the name of a confidential informant may be kept confidential and need not be disclosed to a criminal defendant unless under the circumstances of the case disclosure is required in the interests of fairness and in the light of defendant's specific need for the information in preparing his defense. *Roviaro v. USA*, 353 U.S. 53, 61-62, 77 S.Ct. 623, 628-29, 1 L.Ed.2d 639 (1957)." *United States v. Smith*, 857 F.2d 682, 683 (10th Cir. 1988). In determining whether to disclose the

identity of a confidential police informant, the Court must balance the public interest in protecting the flow of information in a manner necessary for effective law enforcement against an individual's right to prepare his defense. *Roviaro*, 353 U.S. at 62. The court considers the particular circumstances of the case, including the crime charged, the possible defenses, and the significance of the informer's testimony. *Id.*

A defendant seeking disclosure has the burden to come forward with evidence establishing that these *Roviaro* factors favor disclosure. *United States v. Sinclair*, 109 F.3d 1527, 1538 (10th Cir.1997). Mere speculation about the usefulness of an informant's testimony is not sufficient to warrant disclosure. *United States v. Mendoza-Salgado*, 964 F.2d 993, 1001 (10th Cir.1992). "'The defendant must explain to the court as precisely as possible what testimony he thinks the informer could give and how this testimony would be relevant to a material issue of guilt or innocence.' " *United States v. Blevins*, 960 F.2d 1252,1259 (4th Cir.1992) (quoting 2 Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence ¶ 510[06] (1991)); *see also United States v. Ridley*, 814 F.Supp. 992, 996 (D.Kan.1993)."When it is clear that the informant cannot aid the defense, the government's interest in keeping secret his identity must prevail over the defendant's asserted right of disclosure." *United States v. Martinez*, 979 F.2d 1424, 1429 (10th Cir.1992), *cert. denied*, 507 U.S. 1022 (1993).

Defendant has failed to meet this burden. Defense counsel agrees that no confidential informer participated in the charged offenses, and has failed to show how testimony from such a person would be relevant to a material issue of guilt or innocence.

**Suppression motion - January 15, 2010 search**

In this suppression motion, defendant contends that the search warrant supporting the January 15, 2010 search of defendant's residence lacked probable cause because: 1) it was based on stale information; 2) it failed to establish a sufficient nexus to the residence searched; and 3) the only non-stale information with a sufficient nexus to the residence was obtained in an illegal search of defendant's trash.

The search warrant reveals that confidential informants purchased methamphetamine from the defendant in his van, at undisclosed locations, on September 17, 2008, October 13, 2008, and November 20, 2008. Immediately after the latter two buys, DEU agents followed the defendant directly to his home on Grand Ct. In April of 2009, defendant moved from his residence on Grand Ct. to a residence on 43rd Street, where a confidential source purchased methamphetamine from the defendant in April. In October of 2009, officers found that defendant had moved back into the residence on Grand Ct., where they noticed a "high volume of short term traffic at all times of the day and night." Dk. 21, Exh. 1. On January 11, 2010, Deputy Pipkin and Deputy Clemmons went to defendant's residence on Grand Ct., observed "a large amount of trash bags and boxes placed at the end of the driveway for regular pickup," "walked up to the driveway and took four white trash bags, each of which were tied at the top," and took them to be searched. In defendant's trash they found twelve torn plastic baggies, four burnt marijuana cigarettes (one of which tested positive for THC), and other containers with residue which tested positive for methamphetamine. Dk. 21, Exh. 1. Officers obtained and executed a search warrant of defendant's Grand Ct. residence on January 15, 2010, then charged defendant with possession with intent to distribute methamphetamine on that date.

Defendant contends that the search of his trash was illegal for the following reasons: the trash was in his driveway and thus within the curtilage of his house; he had a subjective expectation of privacy in his trash; he "had not placed the trash curbside for collection"; and the government did not contend that it was a regular trash pickup day for defendant's neighbohood. Dk. 14, p. 10.

In determining whether the officers' conduct violated the Fourth Amendment, the Court first considers whether the trash bags were within the curtilage of the home

> "Curtilage is the area to which extends the intimate activity associated with the sanctity of a man's home and the privacies of life." *Oliver v. United States*, 466 U.S. 170, 180, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984) (internal quotations omitted). To determine whether an area falls within the home's curtilage, we consider four factors: (1) the proximity of the area to the home; (2) inclusion of the area within an enclosure surrounding the home; (3) the nature of the uses of the area; and (4) steps taken by the resident to protect the area from observation by persons passing by. *See United States v. Dunn*, 480 U.S. 294, 301, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987). These factors are but "analytical tools" used to determine the ultimate question of "whether the area in question is so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection." *Id*.

*United States v. Long*, 176 F.3d 1304, 1308 (10th Cir.), *cert. denied*, 528 U.S. 921 (1999).

Here, the undisputed facts show that the trash bags were placed at the end of the driveway as if awaiting regular pickup and that officers did not put them there. Society does not recognize a reasonable expectation of privacy in "trash left for collection in an area accessible to the public." *California v. Greenwood*, 486 U.S. 35, 41,108 S.Ct.1625, 100 L.Ed.2d 30 (1987). *See United States v. Martinez*, 198 F.3d 259, 1999 WL 910029, *3 (10th Cir. 1999). Accordingly, the court finds the trash to be outside the curtilage of defendant's house and outside the protection of the Fourth

Amendment.

The trash search occurred only four days before the search warrant was issued and executed. The contents of the trash at defendant's residence are indicative of illegal drug usage, providing a clear nexus between the defendant, the items stated in the warrant, and the residence searched. Accordingly, the information presented in the search warrant was neither stale nor lacking a nexus to the residence searched, as defendant contends. This motion borders on the frivolous.

**Suppression motion - April 12, 2010 search**

Defendant's second suppression motion contends that officers conducted an illegal protective sweep immediately after executing an arrest warrant for defendant at his home on April 12, 2010. Defendant argues that without the information obtained during the sweep, the search warrant would fail for lack of probable cause. Defendant asserts that since Deputy Pipkin had seen one individual arrive and leave, had seen that the only vehicle in the garage belonged to defendant, and had seen that no other vehicles were in the driveway or parked on the street near the residence, there was no reason to believe anyone other than defendant was present. Dk. 16, p. 2. These three assertions by counsel are unsupported by the stipulated facts, so shall be disregarded.

The uncontested facts establish that officers executed an arrest warrant for the defendant at his home on April 12, 2010, arresting the defendant at his front door. Immediately thereafter, officers conducted what they deem to be a protective sweep of defendant's residence and garage. After seeing marijuana and drug paraphernalia in plain sight in the garage, they left, obtained a search warrant for the residence, returned

7

to the residence, executed the search warrant, and seized incriminating evidence.[1]

The search warrant affidavit by Deputy Pipkin states that defendant was known to be a drug dealer and that drug dealers "commonly have in their possession firearms and other weapons." Dk. 16, Exh. 1, p. 2. It states that Deputy Pipkin had received information on March 17, 2010 from a concerned citizen that "a high volume of short-term traffic was again being seen" at defendant's Grand Ct. residence, the majority of which was between 2 and 3 a.m. The citizen stated that some vehicles would show up and leave as much as five times a day. *Id.*

The search warrant affidavit by Deputy Pipkin specifically states his rationale for doing a protective sweep:

> Prior to serving the warrant, surveillance noticed short-term traffic and also observed [defendant] standing in [his] garage. Sgt. Dale knocked on the door and announced our presence. [Defendant] opened the door and he was taken into custody. Due to the updated reports of short-term traffic coming and going, [defendant] owning a large Doberman Pinscher (believed to be inside [the Grand Ct. residence]) and my observation of unknown persons' arriving and leaving, deputies were concerned if more persons and or the K-9 were present inside the residence. A protective sweep of the residence was conducted to ensure the safety of everyone present.

Dk. 22,Exh. 1, p. 5. The affidavit also revealed that "...there was also a surveillance camera watching the front of the house which was displayed and active on a monitor in the front bedroom. The surveillance camera has been replaced since the search warrant on January 15th where two surveillance cameras were seized." *Id.*

In *Maryland v. Buie*, 494 U.S. 325, 327, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990),

---

[1]The relevance of this evidence is unclear to the court, since the indictment does not charge defendant with any crime occurring in April of 2010, or at any time after January 15, 2010. It charges only offenses on April 17, 2009, and January 15, 2010.

the Supreme Court explained that "[a] 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding." *See Armijo ex rel. Armijo Sanchez v. Peterson*, 601 F.3d 1065, 1073 (10th Cir. 2010). A protective sweep is justified by the threat of accomplices launching a surprise attack during an arrest and is particularly important during an in-home arrest, due to the heightened potential for an ambush in unfamiliar surroundings. *Id.* at 333. A protective sweep may be executed after an arrest if there is a reasonable possibility that other persons may be present on the premises who pose a danger to the officers. *United States v. Jones*, 193 F.3d 948, 950 (8th Cir.1999).

> For a *Buie* search to be upheld under the Fourth Amendment, officers must have "possessed a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warranted the officer in believing that the area swept harbored an individual posing a danger to the officer or others." *[buie]* (quoting *Michigan v. Long*, 463 U.S. 1032, 1049-50, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983))

*United States v. Freeman*, 479 F.3d 743, 750 (10th Cir. 2007) (alterations omitted).

An officer's knowledge of a Doberman Pinscher nearby is a factor which can contribute to a reasonable belief of danger, supporting a protective sweep. *See United States v. Bernard*, 757 F.2d 1439, 1443 (4th Cir.1985). Similarly, that a house has a surveillance camera attached to it "could indicate a heightened possibility of a surprise attack." *United States Davis*, 471 F.3d 938, 945 (8th Cir. 2006). Here, Deputy Pipkin knew from surveillance before the protective sweep that defendant's residence was protected by a surveillance camera "just below the front door." Dk. 14, Exh. 1, p. 3. The court finds that the undisputed facts stated in Deputy Pipkin's affidavit would have led a

9

reasonable officer to conclude that individuals posing a legitimate threat to officer safety could have been present on the premises at the time of defendant's arrest. Accordingly, defendant's motion shall be denied.

IT IS THEREFORE ORDERED that the following motions of defendant are denied: motion to compel discovery regarding informants (Dk. 17); motion for discovery of reports related to controlled buys (Dk. 19); motion to suppress evidence from January 15, 2010 search (Dk. 14); and motion to suppress evidence from April 12, 2010 search (Dk. 16).

Dated this 29th day of June, 2010.

                                      s/ Sam A. Crow
                                      Sam A. Crow, U.S. District Senior Judge